UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. _____- Civ

DANIEL A. BRNA, RAMON
FERNANDEZ, and JAMES E. SCOTT,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

vs.

ISLE OF CAPRI CASINOS, INC.,
and INTERBLOCK USA, L.L.C.,

      Defendants.
_____/

**CLASS ACTION**

## CLASS ACTION COMPLAINT

Plaintiffs Daniel A. Brna, Ramon Fernandez, and James E. Scott, on behalf of themselves and all others similarly situated, sue defendants Isle of Capri Casinos, Inc. ("the Isle") and Interblock USA, L.L.C. ("Interblock"), and say:

## INTRODUCTION

1. Plaintiffs Daniel A. Brna, Ramon Fernandez and James E. Scott ("Brna," "Fernandez" and "Scott" or collectively "plaintiffs") bring this national class action challenging defendants' wrongful business practice of overcharging commissions to casino fan club members and customers who use a specific type of gaming machine called "Organic Dice" ("the game") manufactured and maintained by Interblock and owned by the Isle. These commissions exceed the amounts permitted under the express rules of the game. Plaintiffs assert this action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated ("class members").

## PARTIES

2. Brna is a citizen and resident of the State of Florida.

1

3. Fernandez is a citizen and resident of the State of Florida.

4. Scott is a citizen and resident of the State of Florida.

5. The Isle is a corporation organized under the laws of the State of Delaware and is authorized to do business in various states including but not limited to Florida. The Isle is an owner and operator of fourteen (14) casino gaming facilities in the United States, including the Isle Pompano Park casino in Pompano Beach, Florida, as well as casinos in Colorado, Iowa, Louisiana, Mississippi, Missouri and Pennsylvania.

6. Interblock is a limited liability company organized under the laws of the State of Nevada and is authorized to do business in various states including but not limited to Florida. Interblock is a manufacturer and distributor of electronic gaming machines, including the Organic Dice at issue in this case.

## JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because plaintiffs are citizens of Florida, defendants are citizens of states outside of Florida, the amount in controversy exceeds $5 million, and pursuant to the Class Action Fairness Act of 2005 ("CAFA") as there are at least one hundred members of the putative class with the amount in controversy exceeding $5 million.

## VENUE

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims of plaintiffs occurred in this district and because defendants are subject to the personal jurisdiction of this Court in that they regularly conduct business within this district.

## FACTUAL ALLEGATIONS

9. At all times material, plaintiffs and class members belonged to the Isle's "Fan Club" and/or its predecessor legacy loyalty program. These programs give regular customers of the Isle

the opportunity to earn benefits based on their level of participation in casino games. In addition, gaming and betting data is maintained by the Isle on its Fan Club members. The Isle provides each Fan Club member an identification card to be used or presented during game play. Brna, Fernandez, and Scott were issued Fan Club cards by the Isle which they used in connection with their gaming activities.

10. A popular game frequently played by plaintiffs and other Fan Club members is known as "Organic Dice" -- the only game at issue in this action.

11. Upon information and belief, the Isle and Interblock have a business relationship under which Interblock sells, supplies, updates and maintains electronic gaming machines -- including Organic Dice -- for the Isle, including but not limited to, the Isle Pompano Park.

12. Organic Dice simulates the table game "craps" by using a set of dice on a vibrating table inside a plastic bubble. The Interblock website describes the game as follows:

> Organic Dice is a fully automated version of the different dice games. The Dice Center unit works on a principle of vibrating table and dice detection. The dice are evenly weighted and are capable of reading and displaying the results of each roll. A carefully calibrated vibration table assures that all dice land flat on the table and guarantees very fast and 100% reliable dice detection. The generator enables between 60 and 80 results per hour.

This game is pictured below as "Fig. 1".



*Fig. 1*

13. Organic Dice is used by casinos as a substitute for regular table craps in jurisdictions where the table game is prohibited. It is also used to provide the game without the cost of live dealers. Organic Dice is supposed to simulate table Craps by offering identical bets with identical odds as the table game. In Florida, live craps is prohibited.

14. In 2012, Organic Dice was classified as a slot machine which allowed Florida casinos to provide this game. Since that time, Organic Dice has been offered in various South Florida casinos, including the Isle Pompano Park.

15. The Organic Dice has a "help" button that provides all operators, owners, and players access to the rules of the game. As in table Craps, Organic Dice offers many different bets that a player can make for each roll of the dice.

16. One type of bet is a so-called "Buy Bet." The rules of the game on the machine itself define this bet as follows:

### BUY BETS

> At any time the betting window is open, a wager can be placed on a specific point (4, 5, 6, 8, 9, or 10) which pays at true odds. A buy bet wins when the specific point is rolled and the bet is lost when a 7 is rolled. There is a commission of 5% of the bet deducted from the winnings if the bet wins. No commission is charged if the bet is taken off, loses, or neither wins or loses. Buy bets may be taken down at any time during an open betting. Buy bets are automatically turned off on a come out roll.

As these rules expressly state, a commission of 5% of the bet is to be deducted from the winnings if the bet wins. The rules screen of the Organic Dice machine -- as it appears to the consumer who is sitting at the table playing the Organic Dice game -- is pictured below as Fig. 2.

4



Fig. 2 Help/Rules screen for Buy Bets.  Isle Pompano Park

17. Interblock is the manufacturer of the Organic Dice machine and provides the software that runs the game.  The software is serviced and updated by Interblock for the Isle.  The Organic Dice game located at the Isle Pompano Park is owned by the Isle and is serviced and managed by both Interblock and Isle.  Upon information and belief, the software also generates

5

and stores extensive historical statistics and data regarding the bets, winnings, and commissions for the Organic Dice.

18. For their own benefit, defendants have overcharged plaintiffs, the class members, and customers for commissions on Buy Bets placed on the Organic Dice machines. Rather than charging a commission of 5% of the *bet*, the Organic Dice machine calculates and deducts a commission of 5% of the *winnings*. This results in the player actually being charged between 6% and 10% on each and every Buy Bet won, depending on the point (number). Contrary to the express rules of the game, the amounts improperly charged by the Organic Dice machine are as follows:

| Number | Proper Commission | Charged Commission |
|---|---|---|
| 6 and 8 | 5% | 6% |
| 5 and 9 | 5% | 7.5% |
| 4 and 10 | 5% | 10% |

19. This overcharging of commissions on Buy Bets has been occurring since the Organic Dice machines were installed at the various casinos owned and operated by the Isle. Upon information and belief, the installation at Isle Pompano Park was done in 2012.

20. After the Organic Dice was placed in the Isle Pompano Park, each of the plaintiffs on varying dates placed multiple Buy Bets on the numbers as identified in paragraph 19 above and were overcharged commissions on all such Buy Bets.

21. Both the Isle and Interblock have knowingly and unfairly profited from this scheme on the Organic Dice game to the detriment of the plaintiffs and members of the class.

22. Examples of the scheme in connection with the overcharging of commissions in the Organic Dice machine are shown below in Fig. 3, 4 and 5.



Fig. 3 - Isle Pompano Park. $20 Buy Bet. Point=8.

Proper commission=$1.00
Commission charged=$1.20



Fig 4. Isle Pompano Park $20 Buy Bet. Point=10.
Proper commission=$1.00
Commission charged=$2.00



Fig. 5 – Isle Pompano $20 buy bet. Point=5
Proper commission=$1.00
Commission charged=$1.50

23. To the extent that Interblock has made changes to the software on the Organic Dice games, the amount of the Organic Dice commissions on the Buy Bets at the Isle has not been corrected.

24. As members of the Fan Club, the Isle maintains records, data, and historical statistics regarding the plaintiffs and class members gaming on the Organic Dice, including winnings and commissions charged.

25. All conditions precedent to the filing of this lawsuit have been satisfied and/or waived.

## CLASS ACTION ALLEGATIONS

26. Plaintiffs bring this action on their own behalf and all others similarly situated pursuant to Fed. R. Civ. P. 23. The Class includes:

> All members of Isle of Capri's "Fan Club" and/or its predecessor customer loyalty program who have placed and won a Buy Bet on the Organic Dice game at an Isle of Capri casino, within the applicable statute of limitation period.

For purposes of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201 et seq. ("FDUTPA") claim in Count IV below, plaintiffs will seek a subclass relating and limited solely to the conduct at the Isle Pompano Park.

27. Excluded from the Class are Isle of Capri and Interblock officers, employees, directors and members of their immediate families; the legal representatives, heirs, successors or assigns of any such excluded party; and the judicial officer(s) to whom this action is assigned and the members of their immediate families.

28. Plaintiffs reserve the right to modify or amend the definition of the proposed class and/or to add and define the subclass if necessary before this Court determines whether certification is appropriate.

29.     This case is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

30.     *Numerosity under Fed. R. Civ. P. 23(a)(1)*.  The members of the class are so numerous that separate joinder of each member is impracticable.  Upon information and belief, and subject to class discovery, the class consists of hundreds (and perhaps thousands) of members, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to the Isle's records.  The Isle has the administrative capability through its computer systems and other records to identify all members of the class, and such specific information is not otherwise available to plaintiffs.

31.     *Commonality under Fed. R. Civ. P. 23(a)(2)*.  There are numerous questions of law and fact common to the class relating to defendants' practice at issue herein and those common questions predominate over any questions affecting only individual class members.  The common questions include, but are not limited to: (a) whether the Isle had a contract with its casino customers who played Organic Dice; (b) whether the Isle breached that contract by charging and deducting commissions that exceeded the amounts permitted by the rules of the game; (c) whether the Isle breached the implied covenant of good faith and fair dealing by charging commissions that exceeded the amounts permitted by the rules of the game; (d) whether the Isle or Interblock were unjustly enriched by charging these excessive and unauthorized commissions; and (e) whether the Isle at Pompano Park or Interblock violated FDUTPA by charging these excessive and unauthorized commissions.

32.     *Typicality under Fed. R. Civ. P. 23(a)(3)*.  Plaintiffs' claims are typical of the claims of the other class members in that they arise out of the same wrongful business practice by defendants, as described herein.

33.     *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4)*.  Plaintiffs are more

than adequate representatives of the class in that they are members of the Fan Club, have played Organic Dice on numerous occasions, and have suffered damages as a result of defendants' wrongful practice. Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions. There is no hostility of interest between plaintiffs and the unnamed class members, and they anticipate no difficulty in the management of this litigation as a class action. Moreover, plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation, and has considerable experience in class action matters.

34. *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations stated above are restated and incorporated herein by reference.

35. *Superiority under Fed. R. Civ. P. 23(b)(3)*. A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation and since the financial resources of defendants are substantial, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a certified class action, the class members would continue to suffer losses and defendants' misconduct will proceed without remedy. In addition, even if class members themselves could afford to prosecute individual litigation, the court system could not sensibly manage and administer the unnecessarily large case load. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a

class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COUNT I

## BREACH OF CONTRACT
### (Against the Isle)

36.  Plaintiffs reallege and incorporate all allegations in paragraphs 1 through 35 as if set forth fully herein.

37.  By operation of law, a customer who participates in a casino game has entered into a contract with the casino, and the rules of the game constitute the terms of that contractual arrangement.

38.  As shown in Figure 2 above, the rules screen on the Organic Dice machine set forth all of the rules of Organic Dice.

39.  The Isle breached its contract with plaintiffs and the class members by charging and deducting commissions that exceeded the amount of commissions allowed under the published rules of the game.

40.  As a direct and proximate result of that breach of contract, plaintiffs and the class members have sustained damages.

WHEREFORE plaintiffs demand judgment against the Isle for themselves and the class members as follows:

(a) Certifying this matter as a class action pursuant to Fed. R. Civ. P. 23;

(b) Designating plaintiffs as appropriate Class representatives and the undersigned as Class Counsel;

(c) Awarding plaintiffs and the class members their damages, prejudgment interest from the date of loss, attorney's fees and costs incurred in this action; and

(d) Granting such other relief as the Court deems just and proper.

## COUNT II

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(Against the Isle )

41. Plaintiffs reallege and incorporate all allegations in paragraphs 1-35 and 37-40 as if set forth fully herein.

42. Every contract in Florida includes an implied covenant of good faith and fair dealing.

43. By charging and deducting commissions that exceed the amount allowed under the published rules of Organic Dice, the Isle has interfered with the reasonable expectations of plaintiffs and the class members and has thereby breached its implied covenant of good faith and fair dealing.

44. As a direct and proximate result of that breach, plaintiffs and the class members have sustained damages.

WHEREFORE, plaintiffs demand judgment against defendant Isle of Capri for themselves and the class members as follows:

(a) Certifying this matter as a class action pursuant to Fed. R. Civ. P. 23;

(b) Designating plaintiffs as appropriate Class representatives and the undersigned as Class Counsel;

(c) Awarding plaintiffs and the class members their damages, prejudgment interest from the date of loss, attorney's fees and costs incurred in this action; and

(d) Granting such other relief as the Court deems just and proper.

## COUNT III

## UNJUST ENRICHMENT
**(Against the Isle and Interblock)**

45. Plaintiffs reallege and incorporate all allegations in paragraphs 1 through 35 as if set forth fully herein.

46. This equitable claim is being asserted as an alternative to the legal claims set forth in this complaint.

47. Plaintiffs and the class members conferred a benefit on defendants by paying commissions on their winnings which exceeded the prescribed amount of such commissions under the rules of Organic Dice.

48. Defendants had knowledge of that benefit in that the inflated commissions were automatically calculated and deducted from plaintiffs' winnings by the very machines that defendants designed, manufactured, managed and placed into operation at the various casinos. Thereafter, defendants shared the benefit of the overcharged commissions.

49. Defendants voluntarily accepted and retained this conferred benefit.

50. The circumstances are such that it would be inequitable for defendants to retain this benefit without paying the value thereof to plaintiffs and the class members.

51. Plaintiffs and the class members have no adequate remedy at law.

WHEREFORE plaintiffs demand judgment against defendants for themselves and the class members as follows:

(a) Certifying this matter as a class action pursuant to Fed. R. Civ. P. 23;

(b) Designating plaintiffs as appropriate class representatives and the undersigned as Class Counsel;

(c)     Awarding plaintiffs and the class members their damages, prejudgment interest from the date of loss, attorney's fees and costs incurred in this action; and

(d)     Granting such other relief as the Court deems just and proper.

## COUNT IV

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT - FLORIDA STATUTES §§ 501.201, et seq.
**(Against the Isle and Interblock)**

52.     Plaintiffs reallege and incorporate all allegations in paragraphs 1 through 35 as if set forth fully herein.

53.     Plaintiffs and each member of the proposed Florida subclass is a "consumer" under FDUTPA.

54.     As detailed herein, defendants engaged in "trade or commerce" within the meaning of FDUTPA.

55.     A deceptive act under FDUTPA is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances to the consumer's detriment. A practice is unfair under this statute if it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

56.     Defendants' wrongful conduct in overcharging commissions to plaintiffs and the Florida subclass at the Isle Pompano Park -- which was contrary to the published rules for Organic Dice -- constitutes a deceptive act or unfair practice in the conduct of trade or commerce within the meaning of FDUTPA.

57.     Defendants' deceptive acts and unfair practices caused harm in the form of actual losses to plaintiffs and the Florida subclass members as described herein.

58.   Plaintiffs and the Florida subclass members incurred actual damages as a direct and proximate result of defendants' deceptive acts and unfair practices in violation of statute.

WHEREFORE plaintiffs demand judgment against defendants for themselves and the Florida subclass members as follows:

(a)   Certifying this matter as a class action pursuant to Fed. R. Civ. P. 23;

(b)   Designating plaintiffs as appropriate class representatives and the undersigned as Class Counsel;

(c)   Declaring pursuant to § 501.211(1), Fla. Stat., that defendants' practice constitutes a violation of the FDUTPA;

(d)   Enjoining defendants' violation of FDUTPA pursuant § 501.211(1);

(e)   Awarding plaintiffs and the Florida subclass members their actual damages, prejudgment interest, reasonable attorney's fees, and costs incurred in this action pursuant to §§ 501.211(2) and 501.2105(1); and

(f)   Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  January 20, 2017

**Kelley Uustal, PLC**
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608

By: /s/ *Cristina M. Pierson*
    John J. Uustal, Esq. (FBN 73547)
    jju@kulaw.com
    John R. Hargrove, Esq. (FBN 173745)
    jrh@kulaw.com
    Cristina M. Pierson, Esq. (FBN 984345)
    cmp@kulaw.com

and

**Daren Stabinski P.A.**
267 Egret Way
Weston, FL 33327
Telephone (954) 540-9517
By: /s/ *Daren Stabinski*
    Daren Stabinski, Esq. (FBN  2951)
    daren@tenderbox.tv